Kidd v. Hurley.

GEORGE W. KIDD and AMERICAN DISTRIBUTING COMPANY

v.

JOHN R. HURLEY et ux. and CATHARINE V. FUREY.

1. A surety is entitled to the benefit of all securities which the creditor holds against the principal as indemnity against loss by reason of his suretyship. The surety's right in this respect may be modified or controlled by contract between him and his principal, but does not require any contract for its support. It is a right which results from the relation of surety and principal, independent of contract, and is founded on the principle of natural justice of placing the charge where, in equity, it belongs.

2. In equity relief will be afforded to a surety for his indemnity out of the property of the principal where the equitable rights of the surety may be protected, without prejudicing the substantial rights of the creditor.

3. In such a case, in a suit for the foreclosure of a mortgage given by the surety, all parties being duly before the court, the progress of the cause may, upon equitable terms, be stayed until the securities of the principal shall be first exhausted.

On exceptions to master's report in foreclosure.

On the 13th of May, 1892, Catharine V. Furey, a dealer in liquors, trading under the name of John Furey & Company, was largely indebted to the complainants, and, desiring them to give her credit in excess of $25,000, in pursuance of an arrangement with them procured John R. Hurley, with his wife, to mortgage property in the city of Paterson, which belonged to Hurley, to the complainant George W. Kidd, "for the purpose," using the language of the mortgage,

12

Kidd *v.* Hurley.

" of securing unto the said George W. Kidd, his heirs, executors, administrators and assigns, the payment of any sum of money not exceeding five thousand dollars, which is now or may hereafter be or become due or owing from the said Catharine V. Furey, or said firm, to the said George W. Kidd, and, after the payment in full of such sum, not exceeding five thousand dollars, to said Kidd, to hold the said property as security for the payment to said corporation of such part of the sum not exceeding the amount which may remain after deducting from said five thousand dollars the amount paid to said George W. Kidd as foresaid ; *provided always*, that these presents are upon the express condition that if the said parties of the first part, or the said Catharine V. Furey, their or either of their heirs, executors or administrators, shall pay or cause to be paid at any time within thirty days after demand made upon the said Catharine V. Furey, her heirs or legal representatives, five thousand dollars of the moneys due to the said Kidd and to said corporation, with interest, or if the aggregate indebtedness of said Catharine V. Furey or of the firm of John Furey & Co., to the said Kidd and the said corporation, shall at any time be reduced to the sum of twenty-five thousand dollars or less, then these presents shall be void, otherwise of full force and virtue."

The complainants' bill seeks the foreclosure of this mortgage and makes the Hurleys and Mrs. Furey parties defendant. It alleges that the indebtedness of Catharine V. Furey to the complainants aggregates, and that since the giving of the mortgage it has always aggregated, more than $25,000. Hurley and wife have answered, admitting the allegations of the bill, save as to the amounts due to the complainants since the giving of the mortgage, and as to those allegations submitting to the proofs when produced. Mrs. Furey has not answered.

The matter thus put in issue, being a proper subject of reference to a master, it was referred to one.

The proofs and admissions before the master show that, prior to the giving of the Hurley mortgage, Mrs. Furey, to secure the complainants the first $25,000 of her indebtedness to them, gave them a mortgage upon her dwelling in the city of New York, and as a further security for her entire indebtedness to them, at any time, assigned to them warehouse certificates for seventy-five barrels of whiskey, worth, after the complainants paid some $2,910 for tax upon it and expenses incidental to its safe preservation, from $5,000 to $5,500, and that the aggregate indebtedness to the complainants, at the date of the master's report, including the amount expended to preserve the whiskey, was upwards of $32,700.

Upon these facts appearing, the defendants Hurley insisted before the master that their property should not be sold before the exhaustion of the mortgage of Mrs. Furey upon her dwelling, and the whiskey, pledged for the whole indebtedness.

The master reported adversely to this claim, and because of such report, the exceptions are filed.

Upon the hearing of the exceptions, the complainants and answering defendants agreed that the question so raised before the master should be heard and disposed of as though properly presented by the pleadings, and that the pleadings be hereafter amended, if need be, so that the question may be presented by the record.

*Mr. William B. Gourley,* for the exceptants.

*Mr. James P. Northrop,* for the complainants.

THE CHANCELLOR.

The equity insisted upon by the answering defendants arises from the circumstances that the debtor has given the complainants security for her debt to them. That fact does not appear by the bill, and hence the equity was not presented when Mrs. Furey was called upon to answer. To bind her now, it should be alleged by cross-bill or answer by way of cross-bill, so that she may have her day in court.

The indebtedness consists of three parts—$25,000 secured by the mortgage on the dwelling in New York, $5,000 secured by the mortgage in question, and a surplus of some $2,700. The whiskey is pledged as security for the whole indebtedness. The right of the creditors is, to be fully paid from these three sources.

At the same time the answering defendants, as sureties, in absence of a special agreement to the contrary with their principal, are entitled to the benefit of her securities held by the complainants, after the payment of the complainants, as indemnity against loss by reason of their suretyship.

This right, in a surety, is one which, in the language of Mr.

Kidd *v.* Hurley.

Justice Depue, in the opinion of the court of errors and appeals, in *Philadelphia and Reading Railroad Co.* v. *Little, 14 Stew. Eq. 519*, " results from the relation of surety and principal, independent of contract, and is founded upon principles of natural justice of placing the charge where in equity it belongs."

When, then, the debt is paid by the surety, he will be entitled to be subrogated to all the properties, belonging to his principal, which the creditor holds as security for the debt, in order that he may indemnify himself against loss under his suretyship. At law, he will be compelled to pay the debt, and, after that, may look to the collaterals of his principal for indemnity, but in equity, which does more exact justice under the circumstances of the given case, if there be circumstances from which it appears directly or by reasonable inference that substantial injury or prejudice will not result to the creditor by the enforcement, in the first instance, of the surety's right to have the debt paid from his principal's property, the surety may, in a case of hardship to himself, compel the creditor to resort to the securities in the creditor's hands or under his control, the property of the principal, in satisfaction of the debt, before coming upon him. *Irick* v. *Black, 2 C. E. Gr. 189, 195 ; Philadelphia and Reading Railroad Co.* v. *Little, supra.*

In the present case the testimony before the master was taken between the complainants and the answering defendants to develop whether the answering defendants shall have the relief indicated, and it has disclosed a situation in which it does not appear, and is not to be inferred, that the enforcement of resort to the principal's securities in the first instance will result in substantial prejudice to the complainants, and in which it does appear that it will be a hardship to the answering defendants to raise and pay $5,000, a large portion of which may not be ultimately required of them. But it does appear that, in any event, part of the $5,000 must, by reason of the insufficiency of the other securities, come from the answering defendants' mortgage. The debt, adding to it for the purposes of the following calculation the amount paid for the preservation of the whiskey, is upwards of $32,700, and it is a simple mathematical proposition,

Kidd *v.* Hurley.

assuming, as I justly may, in the absence of all proof to the contrary, most strongly for the sureties, that the $25,000 mortgage will fully pay $25,000 of the indebtedness, that upwards of $7,700 will remain to be satisfied out of the whiskey and the mortgage of the answering defendants, and, if the whiskey be worth $5,000, that upwards of $2,700 necessary to the satisfaction of the debt must come from the Hurley mortgage. This being so, it will be but equitable to require that such sum shall be paid to the complainants as a condition precedent to any stay of this suit until the securities of the debtor shall be exhausted.

But even this relief should not be afforded until Mrs. Furey shall be brought into court upon this issue. The court should proceed upon sure premises. It may be that, by some agreement with the sureties, Mrs. Furey has the right to have their liability exhausted before resort is had to her securities. In short, it may be that the right claimed does not, in fact, exist.

The order of reference to the master required him simply to report the amount due upon the mortgage of the answering defendants, and whether the mortgaged premises should be sold in parcels or together. The insistence of those defendants upon a right to resort to their principal's securities, in the first instance, does not show that $5,000 is not due upon their mortgage, and such equity cannot be urged upon exception to the master's ruling, that by reporting against it he has failed to find the correct amount due. It was not referred to him to ascertain and report upon the merits of the question argued under the exceptions.

I find, however, that in the master's calculation of the amount due upon the mortgage in the suit, he debited the complainants' account with their expenditure of $2,910 in preservation of the whiskey. It is obvious that the answering defendants cannot be charged with that expenditure. That charge must be against the security it protects, and is only to be taken into the general account if the whiskey is to be made presently available to the answering defendants in reduction of that which they are to be called upon to pay. I have so regarded it in stating the equity to which they are entitled. Upon the basis of disallowing that

charge against the general account, the amount due upon the mortgage here in foreclosure, at the date of the master's report, was $4,825.34 instead of $5,000. To secure this small reduction the exceptions are well taken.

I will dispose of this matter in this way: If the answering defendants desire to amend their answer so that, by way of cross-bill, it will claim the equity above discussed and bring Mrs. Furey with the complainants before the court upon it, they may apply to do so within a reasonable time to be fixed by the order hereon, or if Mrs. Furey will consent to an order staying the suit until her securities shall be resorted to, I will so stay the suit upon the answering defendants paying to the complainants, on account of their claim against the mortgage herein, the amount which will remain after subtracting from the sum of $32,700 and upwards found by the master, $25,000 (amount of Furey mortgage) and $5,000 (estimated value of the whiskey).

If neither of these courses shall be pursued, I will make the usual foreclosure decree, and direct the sale of the mortgaged premises to raise and pay $4,825.34 with interest from the date of the master's report.